UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

| | |
|---|---|
| CHIEN VAN BUI, et al.,<br><br>　　　　　　　Plaintiffs,<br><br>　　v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, et al.,<br><br>　　　　　　　Defendants.<br>_____/ | No. C 11-04189 LB<br><br>**ORDER REGARDING THE PARTIES' DISCOVERY DISPUTE LETTERS FILED OCTOBER 23, 2013**<br><br>[Re: ECF No. 57] |

## INTRODUCTION

In this civil rights action brought by the parents of an adult male who was shot and killed by San Francisco police officers, the parties dispute whether a report by the Office of Citizen's Complaints (the "OCC Report") and a report by the San Francisco Police Department's Internal Affairs Division (the "IA Report") are discoverable in their entirety and must be produced to Plaintiffs. They briefed the issue in separate discovery dispute letters filed October 23, 2013, and the court heard oral argument from the parties on November 7, 2013. Upon consideration of the parties' arguments and the applicable legal authority, the court **ORDERS** Defendants to produce to Plaintiffs the Reports in their entirety, subject to the protective order entered on January 23, 2012. *See* Protective Order, ECF No. 15. Defendants must produce the Reports to Plaintiffs by November 14, 2013.

## STATEMENT

According to Plaintiffs' complaint, on December 29, 2010, two San Francisco police officers,

Defendants Austin Wilson and Timothy Ortiz, responded to a call involving Vin Van Bui (also known as Tony Bui) in the home of Mr. Bui's parents, which is located at 629 Bacon Street in San Francisco, California. Complaint, ECF No. 1 ¶¶ 13, 15.[1] The person who made the call told the police dispatcher that Mr. Bui was "mentally challenged" and in his room. *Id.* ¶ 14.

The officers arrived at the home at 3:53 p.m. *Id.* ¶ 16. Mr. Bui was approximately 5 feet 2 inches tall and weighed 110 pounds. *Id.* ¶ 17. Officers Wilson and Ortiz were significantly taller and weighed substantially more than Mr. Bui. *Id.* ¶ 18. After entering the home, the officers encountered family members and determined that they needed no further help. *Id.* ¶ 19. The officers gave the dispatcher the code for the scene being "all clear." *Id.* At the scene, the officers were expressly informed that Mr. Bui was mentally ill, but they nonetheless confronted him and escalated the confrontation with him. *Id.* ¶ 20. Within two minutes of the officers' arrival, Officer Wilson and/or Officer Ortiz shot a total of three rounds at Mr. Bui. *Id.* ¶ 21. Two bullets struck and killed him. *Id.*

Plaintiffs Chien Van Bui and Ai Huynh are the surviving parents and sole heirs at law of Mr. Bui. *Id.* ¶ 6. In their individual capacities, and as successors in interest to the Estate of Vinh Van Bui, they filed the instant action against Officers Wilson and Ortiz and the City and County of San Francisco for violating Mr. Bui's and their constitutional and statutory rights. *Id.* ¶¶ 6, 29-53. Plaintiffs bring two claims against Officers Wilson and Ortiz pursuant to 42 U.S.C. § 1983—one for violating of Mr. Bui's Fourth Amendment right to be free from the use of excessive force (first claim), and one for violating of Plaintiffs' Fourteenth Amendment rights to maintain a parental relationship with Mr. Bui (second claim). *Id.* ¶¶ 29-33. Plaintiffs also bring two claims against the City and County of San Francisco—one pursuant to *Monell v. Department of Social Services*, 436 U.S. 658, 690 (1978), for failing to train Officers Wilson and Ortiz in the proper and reasonable use of deadly force and in the use of force in restraining mentally ill suspects (third claim), and one pursuant to California Code of Civil Procedure § 377.60 for wrongful death (fourth claim). *Id.* ¶¶ 34-53.

---

[1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronically-generated page numbers at the top of the document.

C 11-04189 LB
ORDER                                                2

Now, Plaintiffs seek to obtain two reports related to Mr. Bui's death. The first is a report produced by the Office of Citizen's Complaints. The OCC Report, which Plaintiffs' counsel apparently has viewed in full already, contains the results of the OCC's investigation and interviews and also contains the OCC's findings, conclusions, and recommendations with respect to Officer Wilson's and Officer Ortiz's use of force and the San Francisco Police Department's training policies for these type of incidents. The second is a report by San Francisco Police Department's Internal Affairs Division. According to the parties, the IA Report contains information similar in character to that contained in the OCC Report. Plaintiffs want Defendants to produce both Reports in their entirety, subject to the protective order already entered in this action.[2] Instead, Defendants have produced "all underlying evidence" and "factual information," including interviews, upon which the Reports' findings, conclusions, and recommendations are based. Defendants' Letter, ECF No. 57-2 at 2 & n.1; *id.* at 4; *see also* Plaintiffs' Letter, ECF No. 58 at 2. Defendants object to producing the findings, conclusions, and recommendations from the Reports on the grounds that this information is protected from disclosure under the deliberative process privilege and the official information privilege. Defendants' Letter, ECF No. 57-2 at 4.[3]

---

[2] The court previously entered a stipulated protective order that governs the production of confidential information in this action. Protective Order, ECF No. 15.

[3] Defendants also argue that they should not have to produce the OCC Report's findings, conclusions, and recommendations because Plaintiffs' counsel, in Defendants' counsel's opinion, engaged in questionable tactics by contacting a city employee to gain access to the Report (as opposed to gaining access through the City Attorney). Defendants' Letter, ECF No. 57-2 at 3-4, 8-10. According to Defendants, that means Plaintiffs' counsel inappropriately viewed a preliminary version of the Report and thereafter served an inappropriate Rule 45 subpoena (later withdrawn at Defendants' counsel's request) to get a copy of the report. Defendants also said that Plaintiffs' complaint to the OCC and the federal complaint do not contain all relevant facts, which means that the OCC report is incomplete and thus unreliable. At the November 7, 2013 hearing, Plaintiffs' counsel stated that he would submit a declaration making clear that it was the OCC's attorney who contacted Plaintiffs' counsel and invited them to view the preliminary report, and thereafter suggested that they serve a Rule 45 subpoena to get a copy of the Report. After the hearing, Defendants' counsel filed a letter saying, among other things, that he has no objection to withdrawing Defendants' arguments on this point. Defendants' 11/7/2013 Letter, ECF No. 62. Given Defendants' withdrawal of their argument, there is no longer an aspersion to address.

C 11-04189 LB
ORDER                                      3

# ANALYSIS

## I. LEGAL STANDARD

Subject to the limitations imposed by subsection (b)(2)(C), under Rule 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id*. However, "[o]n motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C).

## II. THE FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED WITHIN THE REPORTS ARE RELEVANT UNDER RULE 26

The court first must determine whether the findings, conclusions, and recommendations from the Reports are "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Generally, it is the party seeking to compel discovery that has the burden to show this, *see Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995), and the court believes that Plaintiffs have. As noted above, the Reports contain the results of the OCC's and the IA's investigations and interviews and also contain those entities' findings, conclusions, and recommendations with respect to Officer Wilson's and Officer Ortiz's use of force and the San Francisco Police Department's training policies for these type of incidents. This information is relevant to Plaintiffs' claims that Officers Wilson and Ortiz and the City and County of San Francisco for violating Mr. Bui's and their constitutional and statutory rights.[4] It is uncertain whether these findings, conclusions, and recommendations are

---

[4] It is not clear whether Defendants argue that the findings, conclusions, and recommendations from the Reports are not relevant under Rule 26(b), or whether Defendants only

admissible evidence. *See Maddox v. City of Los Angeles*, 792 F.2d 1408, 1417-18 (9th Cir. 1986) (the district court did not abuse its discretion by excluding under Federal Rules of Evidence 403 and 407 an internal affairs investigation and subsequent measures taken by the municipal defendant); *Burdett v. Reynoso*, No. C-06-00720 JCS, 2007 WL 454034, at *3 (N.D. Cal. Nov. 20, 2007) (finding statements of witnesses before the OCC admissible for impeachment, but finding "the remaining proceedings and conclusions of the OCC" inadmissible under Federal Rule of Evidence 403). Nonetheless, the court cannot say that the information is not reasonably calculated to lead to the discovery of admissible evidence, *see Soto*, 162 F.R.D. at 611 (finding that internal affairs documents containing "complaints of excessive force, the names of officers involved, witnesses identified, *as well as findings and conclusions*," are "relevant and would likely lead to admissible evidence in an excessive force case) (emphasis added).[5]

---

argue that they are privileged. On one hand, Defendants write that the Reports "concern[] issues of policy and training and is remedial in nature and therefore [are] irrelevant" to Plaintiffs' claims, Defendants' Letter, ECF No. 57-2 at 2, but this statement sounds like it relates to Defendants' argument that the fourth *Frankenhauser* factor weighs in favor of the official information privilege barring disclosure, *see id.* at 6-7. *See also Frankenhauser v. Rizzo*, 59 F.R.D. 339 (E.D. Pa. 1973). To the extent that Defendants argue that the findings, conclusions, and recommendations from the Reports simply are not relevant under Rule 26(b), the court disagrees. To the extent that Defendants argue that the findings, conclusions, and recommendations from the Reports are privileged, the court discusses that argument *infra*.

[5] That said, the court found most of the opinions cited by Plaintiffs inapposite because, given Defendants' production of "all underlying evidence" and "factual information," including interviews, upon which the Reports are based, the issue here is only whether the Reports' <u>findings, conclusions, and recommendations</u> are relevant and discoverable. The opinions cited by Plaintiffs say nothing about this issue. *See Holland v. City of San Francisco*, No. C10-2603 TEH, 2013 WL 98295, at *3 (N.D. Cal. Mar. 12, 2013) (relying in part on plaintiff's interview with the OCC to grant summary judgment for defendant); *Haynes v. City and County of San Francisco*, No. C 09-0174 PJH, at *4-5 (N.D. cal. July 28, 2010) (granting summary judgment for defendant on a *Monell* claim in part because plaintiff had not shown that the OCC process was inadequate or demonstrated a policy or custom of indifference to constitutional rights); *Tan v. City and County of San Francisco*, No. C 08-01564 MEJ, 2010 WL 726985, at *2 (N.D. Cal. Feb. 26, 2010) (allowing plaintiffs to use evidence and argument related to OCC complaints for purposes of impeachment); *Hwang v. City and County of San Francisco*, No. C-07-2718 MMC, 2008 WL 4447708, at *2 (Sept. 30, 2008) (denying defendant's motion for summary judgment on a *Monell* claim where defendant failed to demonstrate how having the OCC process negated plaintiff's claim that defendant maintained a policy of deliberate indifference to constitutional rights); *Burdett v. Reynoso*, No. C-06-00720 JCS,

C 11-04189 LB
ORDER                                   5

1   **III. THE FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED**
2   **WITHIN THE REPORTS ARE NOT PRIVILEGED**

3   Defendants argue that the findings, conclusions, and recommendations from the Reports are
4   protected from disclosure under the deliberative process privilege and official information privilege
5   under federal law.[6] Defendants' Letter, ECF No. 57-2 at 4. It is Defendants' burden to demonstrate
6   that the privileges apply. *See Tornay v. United States*, 840 F.2d 1424, 1426 (9th Cir. 1988) ("The
7   party asserting an evidentiary privilege has the burden to demonstrate that the privilege applies to
8   the information in question.") (citing *United States v. Hirsch*, 803 F.2d 493, 496 (9th Cir. 1986));
9   *Martin v. Evans*, No. C 08–4067 JW (MEJ), 2012 WL 1894219, at *2 (N.D. Cal. May 23, 2012).
10  The court addresses each privilege argument in turn below.

11  **A. The Deliberative Process Privilege Does Not Protect the Findings, Conclusions, or**
12  **Recommendations of the Reports in this Instance**

13  Federal law recognizes the deliberative process privilege, which "shields from public disclosure
14  confidential inter-agency memoranda on matters of law or policy." *Nat'l Wildlife Fed'n v. U.S.*

---

2007 WL 454034, at *3 (N.D. Cal. Nov. 20, 2007) (finding statements of witnesses before the OCC admissible for impeachment, but finding "the remaining proceedings and conclusions of the OCC" inadmissible under Federal Rule of Evidence 403); *Medora v. City and County of San Francisco*, No. C 06-0558, at *13 (N.D. Cal. Aug. 31, 2007) (granting defendant's motion for summary judgment with respect to plaintiff's *Monell* claim because plaintiff did not show that there was widespread policy of failing to comply with a general order related to the OCC process); *Detoy v. City and County of San Francisco*, 196 F.R.D. 362, 368 (N.D. Cal. July 19, 2000) (requiring production of an OCC "file" that contains witness names and interviews); *Fernandez v. City and County of San Francisco*, No. C-93-2597, 1996 WL 162993, at *6 (N.D. Cal. Mar. 18, 1996) (denying motion for new trial based on, among other things, defendant's use of OCC interviews and a "Complaint Work Summary" to impeach witnesses).

[6] "Questions of privilege that arise in the course of the adjudication of federal rights are 'governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience.'" *United States v. Zolin*, 491 U.S. 554, 562 (1989) (quoting Federal Rule of Evidence 501); *see Heathman v. United States District Court*, 503 F.2d 1032, 1034 (9th Cir. 1974) ("[I]n federal question cases the clear weight of authority and logic supports reference to federal law on the issue of the existence and scope of an asserted privilege."). Federal law applies to privilege based discovery disputes involving federal claims, even if allied with by pendent state law claims. *See*, *e.g.*, *Pagano v. Oroville Hospital*, 145 F.R.D. 683, 687 (E.D. Cal. 1993); *Martinez v. City of Stockton*, 132 F.R.D. 677, 681–83 (E.D. Cal. 1990).

C 11-04189 LB
ORDER                                6

*Forest Serv.*, 861 F.2d 1114, 1116 (9th Cir. 1988) (citing *Wolfe v. Department of Health and Human Servs.*, 839 F.2d 768, 773 (D.C. Cir. 1988) (en banc)).  Under the privilege, a government can withhold documents or prevent testimony that "reflect[s] advisory opinions, recommendations and deliberations comprising part of a process by which government decisions and policies are formulated."  *FTC v. Warner Commn's*, 742 F.2d 1156, 1161 (9th Cir. 1984).  The primary purpose of the privilege is to "prevent injury to the quality of agency decisions" where "'frank discussion of legal or policy matters' in writing might be inhibited if the discussion were made public."  *Sears*, 421 U.S. at 150 (quoting S. Rep. No. 813, p. 9).  Its other purposes include to "protect against premature disclosure of proposed policies before they have been finalized or adopted" and "to protect against confusing the issues and misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action."  *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980) (citing *Jordan v. U.S. Dep't of Justice*, 591 F.2d 753, 772-774 (D.C. Cir. 1978)).

There are two requirements to establish the applicability of the privilege.  *See North Pacifica, LLC v. City of Pacifica*, 274 F. Supp. 2d 1118, 1121 (N.D. Cal. 2003).  First, the document or testimony "must be predecisional—i.e., it must have been generated before the adoption of [a] policy or decision."  *FTC*, 742 F.2d at 1161; *see also Sears*, 421 U.S. at 152 (noting that "communications made after the decision and designed to explain it" are not privileged).  Second, the document or testimony "must be deliberative in nature, containing opinions, recommendations, or advice about . . . policies [or decisions]."  *FTC*, 742 F.2d at 1161.  As one court has put it, "the central question is not whether the information at issue bears a causal connection to a final determination, but is rather whether the requested information independently 'reflects' the deliberative process itself."  *McGrady v. Mabus*, 635 F. Supp. 2d 6, 18 (D.D.C. 2009) (citing *Public Citizen, Inc. v. Office of Mgmt. & Budget*, 569 F.3d 434, 444 (D.C. Cir. 2009) ("Only those portions of a predecisional document that reflect the give and take of the deliberative process may be withheld.") (internal citations omitted)).  For this reason, "[p]urely factual material that does not reflect deliberative processes is not protected"; nonetheless, factual material that "is so interwoven with the deliberative material that it is not severable" is protected.  *Id.*  Indeed, one court has

cautioned that, while [f]actual material generally is not considered deliberative, . . . the fact/opinion distinction should not be applied mechanically.  Rather, the relevant inquiry is whether 'revealing the information exposes the deliberative process.'" *Sanchez v. Johnson*, No. C-00-1593 CW (JCS), 2001 WL 1870308, at *5 (N.D. Cal. Nov. 19, 2001) (quoting *Assembly of the State of California v. United States Dep't of Commerce*, 968 F.2d 916, 920 (9th Cir. 1992)).  "The court must, however, take into account the deliberative process as a whole, and whether the disclosure of even factual material would reveal a decisionmaker's mental process." *Hajro v. U.S. Citizenship and Immigration Servs.*, 832 F. Supp. 2d 1095, 1112 (N.D. Cal. 2011) (citing *Cal. Native Plant Soc'y v. United States Environmental Protection Agency*, 251 F.R.D. 408, 413 (N.D. Cal. 2008); *see also Nat'l Wildlife*, 861 F.2d at 1118-19.

"Even if established, the privilege can be overcome because it is a qualified privilege; that is, '[a] litigant may obtain deliberative materials [or information] if his or her need for the materials [or information] and the need for accurate fact-finding override the government's interest in non-disclosure." *North Pacifica*, 274 F. Supp. 2d at 1122 (quoting *FTC*, 742 F.2d at 1161).

> In deciding whether the qualified deliberative process privilege should be overcome, a court may consider the following factors: (1) the relevance of the evidence; (2) the availability of other evidence, (3) the government's role in the litigation, and (4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions. *See id*. Other factors that a court may consider include: (5) the interest of the litigant, and ultimately society, in accurate judicial fact finding, (6) the seriousness of the litigation and the issues involved, (7) the presence of issues concerning alleged governmental misconduct, and (8) the federal interest in the enforcement of federal law.

*Id.* (citing *United States v. Irvin*, 127 F.R.D. 169, 173 (C.D. Cal. 1989).

Importantly, several courts have found that the deliberative process privilege generally does not apply in civil rights lawsuits to protect from disclosure internal affairs documents investigations and records of witness/police officer statements, as these routinely generated communications are not designed to contribute to the formulation of important public policy. *See Soto*, 162 F.R.D. at 612–13 ("The 'deliberative process' privilege, closely related to the self-critical analysis privilege, is also inappropriate for use in civil rights cases against police departments."); *see also Pittman v. County of San Diego*, Civil No. 09–CV–1952–WQH(WVG), 2010 WL 3733867, at *3 (S.D. Cal. Sept. 17, 2010).  Defendants likewise cite no opinions applying the privilege in this situation.  *See*

Defendants' Letter, ECF No. 57-2 at 5 (citing only opinions discussing the privilege in non-civil rights cases); *see also Duenez v. City of Manteca*, No. 2:11–cv–1820 LKK AC, 2013 WL 684654, at *12 (E.D. Cal. Feb. 22, 2013) ("Defendant cites to no controlling authority applying the deliberative process privilege to the [internal investigative] documents sought by way of this RFP in the context of a civil rights case.").

Even if the court did apply the deliberative process privilege, it is not clear that the Reports are protected by it. "As originally developed, the deliberative process privilege was designed to help preserve the vigor and creativity of the process by which government agencies formulate important public *policies*." *Kelly*, 114 F.R.D. at 658 (emphasis in original) (citation omitted). It was not designed to protect from disclosure mere "communications that might contribute to the making of any 'decision' by a public official." *Id.* at 659. While Defendants say that the Reports "concern[] issues of policy and training," Defendants' Letter, ECF No. 57-2 at 2, they have not presented the court with copies of them (as they said they would in their Letter, *see id.* at 3), and when describing the Reports with slightly more specificity, Defendants say only that the Reports concluded that the officers' conduct was objectively reasonable under the circumstances but that "there were training and policy failures," *id.* From this summary, it is not clear whether the "issues of policy and training" relate to the officers' encounter with Mr. Bui specifically or relate to the development of municipal policy or training generally. If they relate to the former, the deliberative process privilege certainly would not apply. *See Pittman*, 2010 WL 3733867, at *3 ("The deliberative process privilege does not apply to the requested documentation because the internal affairs investigation does not reflect discussion among those responsible for governmental decision-making. Rather, the documentation includes Plaintiffs' complaints, the names of the deputies involved, witnesses identified, along with findings and conclusions regarding the specific incident between Plaintiffs and the deputies."). And if they relate to the latter, Defendants provide no declarations from any policy-makers demonstrating that disclosure of the Reports' findings, conclusions, and recommendations would hinder "the vigor and creativity of the process by which government agencies formulate important public *policies*." *Kelly*, 114 F.R.D. at 658 (emphasis in original). Rather, Defendants merely state, without supporting documentation, that if "the recommendations of the [R]eport[s] to

be accepted, they *could* result in changes to future police training and practice policies." Defendants' Letter, ECF No. 57-2 at 5 (emphasis added). In light of the principle that privileges be narrowly construed because they "derogate the search for truth," *Kelly*, 114 F.R.D. at 659 (citing *United States v. Nixon*, 418 U.S. 83, 710 (1974)), Defendants' unsupported statement is not sufficient to bring the Reports within the privilege's protections.

**B. The Official Information Privilege Does Not Protect the Findings, Conclusions, or Recommendations of the Reports in this Instance**

Federal common law also recognizes a qualified privilege for official information. *Kerr v. U.S. Dist. Ct. for the Northern Dist. of Cal.*, 511 F.2d 192, 198 (9th Cir. 1975). "In determining what level of protection should be afforded by this privilege, courts conduct a case by case balancing analysis, in which the interests of the party seeking discovery are weighed against the interests of the governmental entity asserting the privilege." *Soto*, 162 F.R.D. at 613 (citing *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033-34 (9th Cir. 1990), *cert. denied*, 502 U.S. 957 (1991); *Hampton v. City of San Diego*, 147 F.R.D. 227, 230-31 (S.D. Cal. 1993); *Miller v. Pancucci*, 141 F.R.D. 292, 300 (C.D. Cal. 1992); *Kelly v. City of San Jose*, 114 F.R.D. 653, 660-63 (N.D. Cal. 1987)). "In the context of civil rights suits against police departments, this balancing approach should be 'moderately pre-weighted in favor of disclosure.'" *Id.* (quoting *Kelly*, 114 F.R.D. at 661).

But before courts engage in this balancing of interests, "the party asserting the privilege . . . must properly invoke the privilege by making a 'substantial threshold showing.'" *Id.* at 613 (citing *Kelly*, 114 F.R.D. at 669). To fulfill the threshold requirement, "the party asserting the privilege must submit a declaration or affidavit from a responsible official with personal knowledge of the matters to be attested to in the affidavit." *Id.* at 613 (citing *Kelly*, 114 F.R.D. at 669). The affidavit must include:

> (1) an affirmation that the agency generated or collected the material in issue and has maintained its confidentiality; (2) a statement that the official has personally reviewed the material in question; (3) a specific identification of the governmental or privacy interests that would be threatened by disclosure of the material to plaintiff and/or his lawyer; (4) a description of how disclosure subject to a carefully crafted protective order would create a substantial risk of harm to significant governmental or privacy interests, and (5) a projection of how much harm would be done to the threatened interests if disclosure were made.

*Kelly*, 114 F.R.D. at 670; *see also Soto*, 162 F.R.D. at 613; *Chism v. County of San Bernardino*, 159 F.R.D. 531, 533 (C.D. Cal. 1994); *Hampton*, 147 F.R.D. at 230-31; *Miller*, 141 F.R.D. at 301. "A strong affidavit would also describe how the plaintiff could acquire information of equivalent value from other sources without undue economic burden." *Soto*, 162 F.R.D. at 613 (citing *Kelly*, 114 F.R.D. at 670).

"If the court concludes that a defendant's submissions are not sufficient to meet the threshold burden, it will order disclosure of the documents in issue." *Id.* "If a defendant meets the threshold requirements, the court will order an *in camera* review of the material and balance each party's interests." *Id.* (citing *Kelly*, 114 F.R.D. at 671; *Chism*, 159 F.R.D. at 533-34; *Hampton*, 147 F.R.D. at 231; *Miller*, 141 F.R.D. at 301) (footnote omitted). When balancing the parties' interests, the court considers, but is not limited to, the following factors:

> (1) The extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which government self-evaluation and consequent program improvement will by chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any intradepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; (10) the importance of the information sought to the plaintiff's case.

*Kelly*, 114 F.R.D. at 663 (citing *Frankenhauser v. Rizzo*, 59 F.R.D. 339, 344 (E.D. Pa. 1973)).

In this case, Defendants have not made the required "substantial threshold showing" as they have not submitted a declaration from a responsible official explaining why disclosure of the Reports' findings, conclusions, and recommendations would be harmful. To be sure, Defendants make much argument in that regard, but that argument is unsupported by evidence. *See Boyd v. City and County of San Francisco*, No. C-04-5459 MMC (JCS), 2006 WL 1141251, at *5 (N.D. Cal. May 1, 2006) (noting defendant's failure to meet its threshold burden by providing affidavit). Moreover, even if Defendants had made a "substantial initial showing," they have not submitted the Reports to the court for *in camera* review so that it can conduct the balancing of interests required under the applicable authority.

1  Still, upon consideration of Defendants' arguments regarding the application of the ten
2  *Frankenhauser* factors, the court nevertheless finds that the factors support disclosure of the
3  Reports' findings, conclusions, and recommendations pursuant to the protective order entered in this
4  case.

5  The first factor—the extent to which disclosure will thwart governmental processes by
6  discouraging citizens from giving the government information—and the second factor—the impact
7  upon persons who have given information of having their identities disclosed—support disclosure
8  because the identities of any information-giving persons presumably already have been disclosed to
9  Plaintiffs and the court sees no reason why they would care whether the findings, conclusions, and
10 recommendations based in part of the information they provided were disclosed to Plaintiffs (and
11 Defendants offer no argument in this regard).

12 Numerous courts, including this one, have found the third factor—the degree to which
13 government self-evaluation and consequent program improvement will by chilled by
14 disclosure—also to support disclosure. *See Doe v. Gill*, No. C 11–04759 CW (LB), 2012 WL
15 1038655, at *3 (N.D. Cal. Mar. 27, 2012) (rejecting defendants' "chilling effect" argument); *Soto*,
16 162 F.R.D. at 613-14("'[A] general assertion that a police department's internal investigatory system
17 would be harmed by disclosure of the documents is insufficient'" to meet the threshold test for
18 invoking the official information privilege.") (citing *Chism*, 159 F.R.D. at 534-35; *Kelly*, 114 F.R.D.
19 at 672 ("[D]efendants cannot meet their burden simply by asserting, without empirical support, that
20 officers will refuse to cooperate with Internal Affairs investigations if their statements are subject to
21 even limited disclosure."); *see also Williams v. County of Alameda*, No. C 12–2511 SBA (MEJ),
22 2013 WL 4608473, at *2 (N.D. Cal. Aug. 28, 2013); *Watson v. Albin*, No. C-06-07767 RMW
23 (HRL), 2008 WL 1925257 (N.D. Cal. Apr. 30, 2008) ("[Defendant's] arguments that disclosure
24 would discourage exhaustive internal investigations are unpersuasive.  Courts in this district have
25 previously rejected such claims, and there is no reason to depart from that reasoning here.")
26 (citations omitted); *Mai Thi Vu v. Clark*, No. C05-02605 RMW (HRL), 2006 WL 3318096, at *2
27 ("There is no support for an argument that disclosure would lead to a breakdown of the IA
28 investigation system and in the past, courts have struck down such reasoning.") (citations omitted);

*Hernandes v. City of Hayward*, No. C-03-4757EMC, 2005 WL 119871, at *3 (N.D. Cal. Jan. 20, 2005). Defendants' argument that disclosure of "confidential police training tactics" presents a "very real threat" to the "safety of police officers," Defendants' Letter, ECF No. 57-2 at 6, is unpersuasive in light of their failure to supply any evidence to support it or to tell the court whether the findings, conclusions, and recommendations even mention "confidential police training tactics." *See Kelly*, 114 F.R.D. at 665-66 ("[S]ince there is no empirical support for the contention that the possibility of disclosure would reduce the candor of officers who contribute to internal affairs investigations, and since there are solid reasons to believe that that possibility might have the opposite effect (improving accuracy and honesty), there is no justification for offering near absolute protection to the statements that go into such reports or to the opinions and recommendations that conclude them.").

The fourth factor—whether the information sought is factual data or evaluative summary—favors Defendants. Defendants already have produced to Plaintiffs the facts underlying the Reports' findings, conclusions, and recommendations; all that remains are the evaluative portions of them.

The fifth factor—whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question—favors Plaintiffs, as there is no indication that either of them are actual or potential criminal defendants.

The sixth factor—whether the police investigation has been completed—could go either way. On one hand, Defendants state that the OCC Report's "recommendations have not been ratified by the Police Commission" and so "the potential effect of the recommendations on future policy is unknown," Defendants' Letter, ECF No. 57-2 at 7, but on the other hand it appears that the delay may be of Defendants' own making. Defendants inform the court that the OCC completed its investigation and issued its Report on April 23, 2013, but when describing the OCC process they state that the chief of police has 60 days from receipt of the OCC Report to conduct a review and recommend disciplinary action. *Id.* at 3 (quoting *Breslin v. City and County of San Francisco*, 146 Cal. App. 4th 1064, 1072 n.9 (citing S.F. Police Dept. Gen. Order No. 2.04)). It is now well past the

1  60-day period in which to make a decision about the OCC Report's recommendations, and
2  Defendants do not offer an explanation for the delay or tell the court whether an extension was
3  available and granted. In this situation, it would be unfair to allow Defendants to gain an advantage
4  on this factor because of their own delay.

5  The seventh factor—whether any intradepartmental disciplinary proceedings have arisen or may
6  arise from the investigation—also could go either way. Defendants argue that "the facts of the
7  current case clearly indicate that there is a possibility of internal disciplinary proceedings, as
8  evidenced by the filing of a formal complaint with the OCC by the [P]laintiffs," Defendants' Letter,
9  ECF No. 57-2 at 7-8, but earlier they note that the OCC Report concluded that the officers' use of
10 deadly force was found to be objectively reasonable under the circumstances, *id.* at 3. Defendants
11 do not offer an explanation for why the officers might face "internal disciplinary proceedings" based
12 on this finding. Nor do they explain why the OCC Report's conclusion that there were "policy and
13 training failures," *id.*, might subject the officers to discipline.

14 The eighth factor—whether the plaintiff's suit is non-frivolous and brought in good
15 faith—favors Plaintiffs as there is no indication that their action is frivolous or brought in bad faith.

16 The ninth factor—whether the information sought is available through other discovery or from
17 other sources—also favors Plaintiffs. The Reports' findings, conclusions, and recommendations are
18 not available from any other source. Defendants argue that Plaintiffs can get the facts upon which
19 the Reports' findings, conclusions, and recommendations are based by, for example, reviewing the
20 underlying police report or interviewing the witnesses who provided information, but this misses the
21 point. Plaintiffs seek the Reports' findings, conclusions, and recommendations, not the underlying
22 facts (which they already have from Defendants anyway). There is no other way to get them.

23 Finally, the tenth factor—the importance of the information sought to the plaintiff's case—could
24 go either way. As explained above when discussing the relevance of this information to the parties'
25 claims and defenses, while it is uncertain whether these findings, conclusions, and recommendations
26 are admissible evidence, the court cannot say that the information is not reasonably calculated to
27 lead to the discovery of admissible evidence. In other words, it may turn out that this information is
28 important to Plaintiffs' case (if it leads to admissible evidence) or it may not (if it does not lead to

1  admissible evidence and is itself excluded from evidence).  The court cannot say at this time that the
2  information is not important to their case.
3      In sum, the majority of the *Frankenhauser* factors support disclosure of the Reports' findings,
4  conclusions, and recommendations, especially given that this balancing is "moderately pre-weighted
5  in favor of disclosure."  *Kelly*, 114 F.R.D. at 661.  Accordingly, the court finds that the Reports'
6  findings, conclusions, and recommendations are not protected by the official information privilege.

## CONCLUSION

8      Based on the foregoing, the court **ORDERS** Defendants to produce to Plaintiffs the OCC Report
9  and the IA report in their entirety, subject to the protective order entered on January 23, 2012.  *See*
10 Protective Order, ECF No. 15.[7]  Defendants shall produce the Reports to Plaintiffs by November 14,
11 2013.
12     **IT IS SO ORDERED.**
13 Dated: November 8, 2013

_____
LAUREL BEELER
United States Magistrate Judge

---

[7] Following oral argument and the court's oral ruling that it would order disclosure of the OCC Report, Defendants' counsel said that he would disclose the Internal Affairs Report too pursuant to the protective order.