UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| CHIEN VAN BUI,<br><br>    Plaintiff,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, et al.,<br><br>    Defendants. | Case No. 11-cv-04189-LB<br><br>**ORDER GRANTING IN PART DEFENDANTS' ADMINISTRATIVE MOTION TO MODIFY THE COURT'S CASE MANAGEMENT ORDER AND DENYING DEFENDANTS' MOTION TO STRIKE**<br><br>Re: ECF No. 187, 192 |

## INTRODUCTION

The defendants filed an administrative motion to modify the court's case management order to allow them to supplement their expert disclosures to replace Dr. Jon Smith, previously disclosed as a forensic pathologist expert, with another forensic pathologist expert, on the ground that Dr. Smith is unavailable for trial.[1] The plaintiffs responded that they would stipulate to the replacement of Dr. Smith provided that the defendants' replacement expert does not provide opinions different from or in addition to those that were offered by Dr. Smith.[2] The court may decide the motion without a hearing. N.D. Cal. Civ. L.R. 7-11(c). The court grants the defendants'

---

[1] Defs.' Admin. Mot. – ECF No. 187. Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] *See* Snell Decl. Ex. 7 (email) – ECF No. 189-8 at 2.

ORDER – No. 11-cv-04189-LB

motion in part and allows the defendants to replace Dr. Smith with their new proposed expert, Dr. Michael D. Laufer, provided that Dr. Laufer does not provide opinions that are different from or in addition to those that were offered by Dr. Smith. The court denies the defendants' separate motion to strike.[3]

## STATEMENT

The parties have provided Dr. Smith's original expert report[4] and Dr. Laufer's new proposed expert report.[5] The plaintiffs have also provided excerpts of Dr. Smith's deposition testimony.[6] The court finds that Dr. Laufer's proposed expert report offers opinions that are materially different from those offered by Dr. Smith. To take one example, Dr. Smith testified that he had no way to determine how far Vinh Van Bui was from the police officers' weapons when he was shot.[7] By contrast, Dr. Laufer's proposed report states definitively that Mr. Bui was no more than six feet away from the police officers' weapons when he was shot.[8] To take another example, Dr. Smith testified that he could not definitively tell what the position of Mr. Bui's body was when he was shot or whether he was bent over or not.[9] By contrast, Dr. Laufer's proposed report opines that the

---

[3] Defs.' Mot. to Strike – ECF No. 192.

[4] Corrected Connolly Decl. Ex. A (Smith report) – ECF No. 191-1 at 2–4.

[5] Snell Decl. Ex. 9 (Laufer proposed report) – ECF No. 189-10 at 2.

[6] Snell Decl. Ex. 1 (Smith dep.) – ECF No. 189-2 at 2–7.

[7] *Id.* at 4–5 ("Q. So you made a finding that there is no evidence that the guns were fired closer than two feet from the decedent? A. Again, it's dependent upon the specific type of weapon and the type of ammunition that is used. It may be as close as one foot. It's just a general rule of thumb. So maybe one foot, maybe two feet. Q. Or farther? A. Oh, of course, yes. Q. Could have been 30 feet? A. Correct. Q. The evidence is consistent with 30 feet and it is also consistent, as far as you're concerned, with two feet; isn't that right? . . . . THE WITNESS: In the absence of muzzle imprint, gunpowder soot or stipple, or gunpowder particles, once you get beyond whatever the range is to allow those features to be seen -- in handguns that may be a foot or two feet. Once you get beyond that upper limit of range -- or that lower limit of range, then there is no way to determine whether it's 10 feet or 20 feet or 150 feet.").

[8] Snell Decl. Ex. 9 (Laufer proposed report) – ECF No. 189-10 at 2 ("The distance between the muzzles and Bui's chest was between 12 and 72 inches.").

[9] Snell Decl. Ex. 1 (Smith dep.) – ECF No. 189-2 at 2–7 ("Q. What was the angle of the bullet? Where did the gunshot wound go, from where to where? A. Which gunshot wound? Q. Number one. A. Number one went from the mid right chest adjacent to the sternum, or breastbone, and exited the right inferolateral, or right lower side, of the chest. Q. Was it headed down (indicating)? A. Yes.

1  first bullet caused Mr. Bui to fall partially backwards[10] and that the second bullet paralyzed Mr.
Bui's legs and that Mr. Bui's upper torso was angulated forward about 45 degrees when he was
hit[11] — opinions found nowhere in Dr. Smith's report.

## ANALYSIS

**1. Expert Witness Substitution**

The parties agree that the defendants' motion to substitute their expert witness is properly analyzed under Federal Rule of Civil Procedure 16(b). That rule provides that a pretrial schedule — which includes deadlines for the parties to disclose their expert witnesses (deadlines that have now passed here) — "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(5); *see, e.g.*, *Fujifilm Corp. v. Motorola Mobility LLC*, No. 12-cv-03587-WHO, 2014 WL 8094582, at *1 (N.D. Cal. Nov. 19, 2014) (citing cases). "Good cause requires a showing of diligence." *Id.* (citing *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992)). Here, given the plaintiffs' agreement and willingness to stipulate to the substitution of Dr. Smith as long as the substitute expert does not provide opinions different from or in addition to those that were offered by Dr. Smith, the court declines to address the events that leading up to or immediately following Dr. Smith's departure and finds that the good-cause standard has been met.

The court finds, however, that the plaintiffs' objections to Dr. Laufer and his new report are well-founded. "When experts are substituted, the substitute expert's report and testimony is usually limited to the subject matter and theories already espoused by the former expert." *See, e.g.*, *TIC-Indus. Co. of Wyo., Inc. v. Factory Mut. Ins Co.*, No. 4-10CV3153, 2012 WL 2830867, at *9 (D. Neb. July 10, 2012) (citing *Lincoln Nat'l Life Ins. Co. v. Transamerica Fin. Life Ins. Co.*, No.

---

Q. What does that tell you about the position of his body if anything? Was he bent over? A. I can't definitively say that. Q. Is it consistent with him being bent over? A. It may be, yes.").

[10] Snell Decl. Ex. 9 (Laufer proposed report) – ECF No. 109-10 at 2 ("The energy from the other bullet [bullet 1] most likely caused the decedent to fall partially backward.").

[11] *Id.* ("The bullet that embedded in the spine likely had sufficient energy to cause the spinal nerves to fire and caused temporary paralysis of the legs. . . . The angle of the bullet that lodged in the spine appears to be downward toward the floor tracking from upper chest to mid-back. This angle suggests that Bui's upper torso was angulated forward about 45 degrees relative to the plane of the wall.").

United States District Court
Northern District of California

1:04-CV-396, 2010 WL 3892860, at *2 (N.D. Ind. Sept. 30, 2012)); *accord, e.g.*, *Fujifilm*, 2014 WL 8094582, at *2 ("[T]he new expert must limit his or her opinions to the subject matter covered in [the original expert]'s report and may not testify in any manner that is contrary to or inconsistent with [the original expert]'s report. That is, the new expert's opinions must be 'substantially similar' to [the original expert]'s.") (citations and internal brackets omitted). Dr. Laufer's proposed report as currently drafted is not limited to the subject matter and theories espoused by Dr. Smith — it adds new opinions that were not offered by Dr. Smith or that contradict Dr. Smith's opinions and testimony.

"[T]he purpose of allowing substitution of an expert is to put the movant in the same position it would have been in but for the need to change experts; it is not an opportunity to designate a better expert." *In re Northrup Grumman Corp. ERISA Litig.*, No. CV 06-06213-AB (JCx), 2016 WL 6826171, at *4 (C.D. Cal. Apr. 7, 2016) (quoting *United States ex rel. Agate Steel, Inc. v. Jaynes Corp.*, No. 2:13-CV-01907, 2015 WL 1546717, at *2 (D. Nev. Apr. 6, 2015)). The addition at this late date of new opinions by Dr. Laufer that were not offered by Dr. Smith or that contradict Dr. Smith's opinions and testimony would prejudice the plaintiffs. The court therefore holds that the defendants may substitute Dr. Laufer for Dr. Smith, provided that Dr. Laufer provides a new expert report that is "limited to the subject matter and theories already espoused by [Dr. Smith]." *Cf. TIC*, 2012 WL 2830867, at *9. Dr. Laufer will not be permitted to offer (as he does now in the current version of his proposed report) opinions different from or in addition to those that were offered by Dr. Smith.

The parties should meet and confer as necessary to discuss the scope and content of Dr. Laufer's report. Should Dr. Laufer provide a report or otherwise offer expert opinions that are different from or in addition to those offered by Dr. Smith, the court will entertain an appropriate motion, including a motion to exclude those opinions and/or a motion for appropriate cost and fees. *Cf., e.g.*, *TIC*, 2012 WL 2830867, at *9 ("If the deposition of [new expert] reveals opinions beyond the scope of [original expert]'s report, the [opposing party] may then move to exclude those opinions."); *Baumann v. Am. Family Mut. Ins. Co.*, 278 F.R.D. 614, 616 (D. Colo. 2012) (expert substitution "should not be a windfall for Plaintiff. Thus, [new expert]'s opinion should

ORDER – No. 11-cv-04189-LB  4

not stray from the subject matter of [original expert's] opinion. To the extent that [new expert] covers new material in his deposition, Defendant may file a motion to exclude that portion of [new expert]'s opinion."); *Park v. CAS Enters., Inc.*, No. 08cv385 DMS (NLS), 2009 WL 4057888, at *4 (S.D. Cal. Nov. 19, 2009) (awarding costs and fees).

## 2. Motion to Strike

The defendants have filed a separate motion to strike a portion of the plaintiffs' opposition to their administrative motion to substitute their expert witness. The defendants object to a statement that the plaintiffs made in their opposition, namely, that "Dr. Smith testified that he cannot state that Bui was bent over, i.e., leaning forward (as opposed to Dr. Laufer who offers an opinion that Bui was angulated . . . )."[12] The defendants claim that Dr. Smith testified that the position of Mr. Bui's body "may be" consistent with him being bent over and hence the "plaintiffs incorrectly represent[ed] a material fact" in arguing that Dr. Smith could not state that Mr. Bui was bent over.[13] But Dr. Smith's testifying that the position of Mr. Bui's body "may be" consistent with him being bent over is very different from his being able to state that Mr. Bui *was* bent over. Dr. Smith explicitly testified that he could *not* state that Mr. Bui was bent over.[14] The plaintiffs' description of Dr. Smith's testimony involved no misrepresentation. The defendants' motion to strike is therefore denied.

## CONCLUSION

For the foregoing reasons, the court grants the defendants' motion in part and allows the defendants to replace Dr. Smith with Dr. Laufer, provided that Dr. Laufer does not provide

---

[12] Defs.' Mot. to Strike – ECF No. 192 at 2 (ellipsis in original).

[13] *Id.* at 1–2.

[14] Snell Decl. Ex. 1 (Smith dep.) – ECF No. 189-2 at 6 ("Q. What does that tell you about the position of his body if anything? Was he bent over? A. I can't definitively say that.").

opinions that are different from or in addition to those that were offered by Dr. Smith. The court denies the defendants' motion to strike.

**IT IS SO ORDERED.**

Dated: January 31, 2018

_____
LAUREL BEELER
United States Magistrate Judge