UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| CHIEN VAN BUI, <br>               Plaintiff, <br>     v. <br> CITY AND COUNTY OF SAN FRANCISCO, et al., <br>               Defendants. | Case No. 11-cv-04189-LB <br><br> **FINAL PRETRIAL ORDER** |

The Court held a final pretrial conference on February 22, 2018. The court adopts the following pretrial order pursuant to Federal Rule of Civil Procedure 16(e).

## 1. Trial Date and Length of Trial

A. The jury trial will begin on March 5, 2018, in Courtroom C, 15th Floor, U.S. District Court, 450 Golden Gate Avenue, San Francisco, California. The trial will last two weeks. The trial will be held Monday through Friday from 8:30 a.m. to approximately 1:30 or 2:00 p.m. (or slightly longer to finish a witness) and will include two fifteen-minute breaks. Counsel must arrive at 8:15 a.m. to address any issues (such as objections) before the trial day begins. Once the jury begins deliberations, it usually stays past 2:00 p.m.

B.  Each side will have **15 hours** to present the direct examination of its witnesses and to cross-examine the opposing party's witnesses, including all objections raised during the trial day. In addition, each party may make an opening statement of up to 45 minutes. (If that seems too constrained, the parties must let the court know by close of business on Wednesday.)

C.  The jury will fill out the questionnaires on Thursday, March 1, 2018, and the questionnaires will be available later that morning to the parties, who must copy the questionnaires that morning (three copies). There are nearby copy shops at Turk and Larkin and on Van Ness. The undersigned's courtroom deputy will work with the parties on the process. As discussed at the February 22 conference, the court will give the questionnaires to the lawyers in the order of call, and it will include a list of jurors, again in the order of call. The court's jury-selection procedures are in its April 13, 2012 Pretrial Order.[1]

## 2. Procedures During Trial; Exhibit and Witness Lists

The parties should refer to the court's April 13, 2012 Pretrial Order[2] for the court's procedures regarding the presentation of exhibits, depositions, and witness testimony during trial. In particular, the court reminds the parties of its procedures for using deposition excerpts.[3]

The parties stipulated that witnesses will be excluded from the courtroom until they have testified.[4] The court presumes that the parties do not intend for this to extend to experts, but the parties may clarify if this is not so.

The parties must confer and submit a revised joint exhibit list that eliminates duplicate exhibits. As discussed at the pretrial conference, the defendants' exhibits must eliminate partisan phrasing. The descriptions must be neutral: "photograph," not "crime scene photograph." The deadline is Wednesday, February 28, 2018.

---

[1] ECF No. 26 at 9.

[2] *Id.* at 6–8.

[3] *Id.* at 7.

[4] ECF No. 205 at 5.

The defendants must submit a revised witness list that includes their per-witness trial time estimates, which is required by the court's pretrial order.[5] The court recognizes that this is likely a work in progress, but asks both parties to submit updated witness lists and time estimates as is practicable and in any event, before the trial starts.

As discussed at the February 22 conference, if the parties identify witnesses in common, the defendants will examine such witnesses when the plaintiffs call them (as opposed to recalling them).

### 3. Claims, Defenses, and Relief

The court adopts the recitation in the parties' proposed pretrial order regarding the claims, defenses, and relief sought.[6]

### 4. Stipulations

The parties stipulate in their proposed pretrial order to the following:

1. On December 29, 2010, Defendant Timothy Ortiz and Defendant Austin Wilson used lethal force against Vinh Van Bui.
2. Defendants Ortiz and Wilson were acting under color of state law at the time lethal force was used.
3. Defendants Ortiz and Wilson were acting within the course and scope of their employment with the City and County of San Francisco at the time lethal force was used.
4. Witnesses will be excluded from the courtroom until they have testified.

The parties must prepare the appropriate stipulation to read to the jury and admit as evidence. The court prefers stipulations signed by the parties, marked as an exhibit, and added to the exhibit binder. A stipulation — like any evidence — belongs to the parties and not to the court. An

---

[5] ECF No. 26 at 4.
[6] ECF No. 205 at 3.

example is as follows: "The plaintiffs __ and the defendants ___, through their attorneys, stipulate to the following: _____." The lawyers then sign the stipulation at the bottom on behalf of the parties. An issue can be, who reads it. There are different approaches. A "sponsoring" party can read the stipulation at a time that makes sense. Another approach is to put it in at the beginning of the trial or at the end of the plaintiffs' case. This can happen when the parties are double checking that all exhibits are admitted. The court also prefers — to the extent possible — to pre-admit exhibits to streamline the trial. This approach does not preclude the parties' laying (at least some) foundation or inquiring about their stipulated facts in a context that renders them relevant. It is merely a process to avoid objections, get in evidence, and allow the attorneys to put in their cases smoothly.

The parties suggest that they will agree to other stipulations.[7] For the trial times to work, the parties must try to stipulate to matters such as authenticity, business records, and similar issues to avoid calling custodians at trial. The parties may reserve other objections regarding admissibility. If the parties agree to other stipulations, again, they must prepare a stipulation to read to the jury and admit as evidence.

### 5. Motions in Limine

Before addressing the specific motions in limine the parties have filed, the court begins with a few observations and ground rules governing the evidence at trial as a whole. As noted at the February 22 conference, all evidentiary rulings remain interlocutory until the end of trial, but the court provides these preliminary observations to guide the parties.

**This is a percipient-witness case.**

This case, at its core, is a percipient-witness case. The issues in this case are whether, on December 29, 2010, Officers Ortiz and Wilson used excessive force against Vinh Van Bui and/or whether they were negligent. The resolution of these issues will depend on what the officers knew or perceived about Mr. Bui and the situation, how they acted in response, and whether their

---

[7] *Id.* at 4–5.

ORDER – No. 11-cv-04189-LB 4

actions were reasonable or non-reasonable and negligent or non-negligent. Testimony of percipient witnesses as to the events of December 29, 2010 are relevant to these issues.

What is not relevant are Mr. Bui's actions prior to December 29, 2010, if they were unknown to Officers Ortiz and Wilson. For example, the fact that Mr. Bui previously may have been involved in incidents where he was dangerous is not relevant to what the officers knew or perceived about Mr. Bui on December 29, 2010 (unless the officers were aware of those incidents). Similarly, the fact that Mr. Bui may have been mentally ill and what his family and friends knew about his mental illness is not relevant to what the officers knew or perceived about Mr. Bui on December 29, 2010. The parties may introduce evidence regarding Mr. Bui's past acts or mental illness before December 29, 2010, if at all, only for limited purposes (e.g., for damages) and in conformance with the rules of evidence (e.g., they may not introduce evidence regarding Mr. Bui's past acts or mental illness to prove that Mr. Bui acted in conformance with them on December 29, 2010, *see* Fed. R. Evid. 404). Again, the parties must remember at all times that this case, at its core, is a percipient-witness case.

**Experts may testify as to hypotheticals but may not testify as to ultimate issues of law.**

The court gave guidance on its general rules regarding expert witnesses and how questions are best couched as hypotheticals questions. This guidance applies equally to both parties. For fact issues, an expert can say that he assumed that such-and-such was the case and, on the facts so assumed, reached a given opinion. Assumptions can be challenged on cross-examination. Experts also can be posed hypothetical questions that overtly assume facts. It can be fair for an expert to conclude — based on specified factual assumptions and posited rules — that a "reasonable officer" could choose certain courses of conduct. It probably is too much to say that "any" or "every" reasonable officer would act the same.

Experts may not testify as to ultimate issues of law. While expert testimony is not objectionable just because it embraces an ultimate issue, *see* Fed. R. Evid. 704(a), "an expert witness cannot give an opinion as to her *legal conclusion*, i.e., an opinion on an ultimate issue of law." *United States v. Diaz*, 876 F.3d 1194, 1197 (9th Cir. 2017) (emphasis in original) (citing *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004)). For

1  example, an expert may not testify that Officers Ortiz and Wilson acted reasonably or

2  unreasonably, or that Mr. Bui did or did not pose an imminent threat of death or bodily harm.

3  Additionally, expert testimony must "help the trier of fact to understand the evidence or to

4  determine a fact in issue" to be admissible. *Id.* at 1196 (citing Fed. R. Evid. 702(a)). The court will

5  exclude expert testimony that does not comply with these strictures.

6  Judging from their discussion at the February 22 conference, the parties do not seem to

7  seriously disagree on these matters.

\* \* \*

For the reasons stated on the record and below, on the parties' specific motions in limine, the court rules as follows:

**Plaintiffs' Motion in Limine 1: Expert Witness Mark Strassberg**

The motion is granted, largely for the reasons that the plaintiffs advance. Dr. Strassberg's testimony is excluded.

**Plaintiffs' Motion in Limine 2: Mr. Bui's "Other Bad Acts"**

The motion is granted, largely for the reasons that the plaintiffs advance. As explained above, the defendants may not question witnesses or introduce evidence about Mr. Bui's "other bad acts" (to use the plaintiffs' phrase) absent a showing that Officers Ortiz and Wilson were aware of such acts at the time of the shooting.

The defendants' reliance on *Boyd v. City and County of San Francisco*, 576 F.3d 938 (9th Cir. 2009), a "suicide by cop" case, is inapposite. In a suicide-by-cop case, the intent of the decedent — namely, whether he intended to provoke the police into shooting him — is directly at issue. Intent is a permissible use of "other bad act" evidence. *See* Fed. R. Evid. 404(b)(2). Here, by contrast, Mr. Bui's intent is not at issue. *Cf. Willis v. City of Fresno*, No. 1:09-cv-01766-BAM, 2013 WL 6145232, at \*3–4 (E.D. Cal. Nov. 21, 2013) (citing *Boyd* and contrasting a suicide-by-cop case to a standard police shooting/self-defense case). Additionally, the probative value of evidence of Mr. Bui's prior "bad acts" is substantially outweighed by its prejudicial effect. *Cf. id.* at \*4.

**Plaintiffs' Motion in Limine 3: Mr. Bui's Mental Condition**

The plaintiffs argue that "evidence of Mr. Bui's mental illness is relevant to plaintiffs' claim that defendants used excessive force and should be admitted for that limited purpose[]."[8] But as discussed above, the mere fact that Mr. Bui might have been mentally ill, standing alone, is not relevant (except perhaps as to damages). As the plaintiffs themselves acknowledge, "[Mr. Bui's] mental state is not at issue in this case."[9] At most, what is relevant is whether "it should have been *apparent to the officer[s]*" that Mr. Bui was mentally ill. *See* Ninth Circuit Pattern Jury Instruction No. 9.25(10) (emphasis added).

Therefore, the court rules as follows. Evidence of Mr. Bui's mental illness that Officers Ortiz and Wilson were or should have been aware of (e.g., a dispatch broadcast to police officers in the field that Mr. Bui was mentally challenged) is admissible for the purpose of determining whether they were or should have been aware that Mr. Bui was mentally ill, just as evidence of Mr. Bui's threats or violence that Officers Ortiz and Wilson were aware of is admissible for the purposes of determining whether they believed that Mr. Bui posed a threat. But just as the defendants may not use evidence of Mr. Bui's past incidents of violence or threats generally to argue that the defendants believed that Mr. Bui posed a threat on December 29, 2010, *see* Rulings on Pls.' Mots. in Limine 1 & 2, the plaintiffs may not use evidence of Mr. Bui's mental illness generally to argue that the defendants should have been aware that Mr. Bui was mentally ill on December 29, 2010.[10]

The court is not precluding the possibility that the plaintiffs may submit evidence that on a prior instance when Mr. Bui's family was concerned about his mental stability, they called the police, and the police coaxed Mr. Bui out of his room and took him to a hospital, to rebut the argument that calling the police necessarily meant that they were afraid of him, and for the limited

---

[8] Pls.' Mot. in Limine ("MIL") 3 – ECF No. 194 at 2.

[9] Pls.' MIL 2 – ECF No. 200-5 at 6.

[10] For example, the plaintiffs want to prevent the defendants from arguing that, because Mr. Bui was violent and posed a threat to others on prior occasions, he likely acted in a similar way on December 29, 2010 and similarly posed a threat. By the same logic, the plaintiffs may not argue that, because Mr. Bui acted in a way that made it apparent to third parties who saw him that he was mentally ill on prior occasions, he likely acted in a similar way on December 29, 2010 and it was similarly apparent to defendants Ortiz and Wilson that he was mentally ill.

ORDER – No. 11-cv-04189-LB    7

purpose of explaining why his family called the police on December 29, 2010. The plaintiffs may not use this evidence to argue that Officers Ortiz and Wilson should have acted in conformance with the way those other police officers acted.

**Plaintiffs' Motion in Limine 4: Expert Witnesses Don Cameron and Robert Yick**

The court refers the parties to its discussion of expert witnesses. As explained above, questions to expert witnesses are best couched as hypotheticals. An expert cannot testify as to ultimate issues of law.

By way of (non-exhaustive) examples, statements such as:

- "An officer's use of force is judged under the objectively reasonable standard[:] would an officer of similar training and experience[,] given the same information and situation[,] choose the same course of action,"[11]
- "The three factors examined by the 9th Circuit to determine the objective reasonableness of force used by peace officers and taught to officers is to look to the seriousness of the crime; does the subject pose an immediate threat to the officer or others and is the subject actively resisting or attempting to flee,"[12] or
- "Title II provisions of the ADA, prohibiting discrimination on the basis of disability by public entities and requiring reasonable accommodations of disabled people's limitations[,] do[] not apply to an officer's on-the-street responses to a reported disturbance, even if they involve disturbed and disabled persons, prior to the officer's securing the scene and ensuring that there is no threat to human life,"[13]

are recitations of legal standards. Instructing the jury on legal standards is for the court, not an expert witness. Similarly, statements such as:

- "the officers acted in an objectively reasonable manner in light of all of the circumstances,"[14]

---

[11] Clark Rule 26 Report – ECF No. 198-9 at 4 (Opinion and/or Conclusion #5).

[12] *Id.* at 6 (Opinion and/or Conclusion #5).

[13] *Id.* at 6–7 (Opinion and/or Conclusion #10).

[14] Defs. Disclosure of Expert Witnesses – ECF No. 198-1 at 2.

ORDER – No. 11-cv-04189-LB                    8

- "Mr. Bui . . . posed an immediate threat of serious injury or death to Officers Ortiz and Wilson,"[15]
- "Mr. Bui posed a deadly force threat,"[16]
- "The use of deadly force by Officers Ortiz and Wilson in firing at Mr. Bui when they saw him with the knife in his hand and he refused to drop it and continued to advance on them was objectively reasonable,"[17] or
- "[Officers Ortiz and Wilson] had probable cause to arrest Mr. Bui for an attempted murder, aggravated assault, assaulting a peace officer and resisting arrest when he did not submit to the arrest and advanced on the officers,"[18]

are opinions on ultimate issues of law.

As explained above, an expert may address hypothetical situations (such as what a police officer might do in a given situation) but cannot testify as to ultimate legal issues (such as whether a course of conduct is legally reasonable or unreasonable).

**Plaintiffs' Motion in Limine 5: Internal Investigations and Decision Not to Bring Criminal Charges**

The motion is granted, largely for the reasons that the plaintiffs advance. The findings and conclusions of the police's internal investigations of the shooting and the decision by the Attorney General's office to not bring criminal charges are, among other things, more prejudicial than probative, and are excluded.

In granting the plaintiffs' motion, the court is not excluding evidence as to what the relevant police policies were. If, for example, the plaintiffs were to argue that the defendants should have used a non-lethal extended range impact weapon (as the defendants hypothesize they might), the defendants may introduce evidence, if any, that police policy prohibited the use of an ERIW to explain why they did not do so. The ruling on this motion simply excludes the findings and

---

[15] *Id.* at 6 (Opinion and/or Conclusion #9).

[16] *Id.* at 7 (Opinion and/or Conclusion #11).

[17] *Id.* at 8 (Opinion and/or Conclusion #13).

[18] *Id.* (Opinion and/or Conclusion #15).

conclusions of the police's internal investigations of the shooting and the charging decision of the Attorney General's office. It does not exclude the underlying police policies themselves.

Statements of witnesses reflected in the police's internal investigation reports may be admissible for impeachment purposes.

**Plaintiffs' Motion in Limine 6: Cumulative Photographs**

The court will consider the arguments in the context of the trial evidence. The court disagrees with the plaintiffs' arguments that the photographs are irrelevant or that they are more prejudicial than probative. That said, the 35 photographs that the defendants have identified, many of which are very similar to each other, are needlessly cumulative. The court's view is that ten photographs is enough, but it will not dictate the precise number in advance. The court suggests that the defendants curate a reasonable number of photographs from among Trial Exhibits 409–443 (which do not necessarily have to include Exhibit 417), which they must identify for the plaintiffs. The defendants may admit these photographs into evidence provided that they can lay a proper evidentiary foundation. (The court assumes they can.)

**Plaintiffs' Motion in Limine 7: Expert Witness Alexander Jason**

The court refers the parties to its discussion of expert witnesses. As explained above, questions to expert witnesses are best couched as hypotheticals. An expert cannot testify as to ultimate issues of law. By way of (non-exhaustive) examples, statements such as "[t]he threat of imminent lethal or serious injury existed to living room occupants and to both officers when the shots were fired"[19] are opinions on ultimate issues of law. As explained above, an expert may address hypothetical situations but cannot testify as to ultimate legal issues.

The court also excludes Mr. Jason's fifth finding that "[t]he Xacto knife held by the decedent is capable of significant cutting action."[20] This is a fact within the understanding of the jury that does not require expert testimony, and Mr. Jason's demonstration using the knife to slice through pork is more prejudicial than probative.

---

[19] Jason Rule 26 Report – ECF No. 198-16 at 11.

[20] *Id.* at 14.

ORDER – No. 11-cv-04189-LB 10

The court holds that Mr. Jason's first, second, and third findings[21] are appropriate matters for expert testimony.

**Defendants' Motion in Limine 1: Negligence**

The motion is denied. The plaintiffs may submit evidence and make arguments on negligence, and the court will provide jury instructions on negligence.

The standard for negligence under California law is not the same as the standard for Fourth Amendment violations under the U.S. Constitution. *See Hayes v. County of San Diego*, 57 Cal. 4th 622, 638 (2013) (distinguishing "the differences between federal constitutional liability and state tort liability"). First, contrary to the defendants' arguments, determining what is or is not wrongful conduct is not necessarily the same for a Fourth Amendment claim as for a state-law-negligence claim. An act can be non-actionable for Fourth Amendment purposes while still being actionable for state-law-negligence purposes.[22] Second, contrary to the defendants' arguments, determining whether given conduct was or was not reasonable is not necessarily the same for a Fourth Amendment claim as for a state-law-negligence claim. *See id.* ("The Fourth Amendment's 'reasonableness' standard is not the same as the standard of 'reasonable care' under tort law[.]"). Among other things, "Fourth Amendment law . . . tends to focus more narrowly than state tort law on the moment when deadly force is used, placing less emphasis on preshooting conduct," *id.*, whereas in a California state-law-negligence claim, "[t]he reasonableness of the [police's] preshooting conduct . . . should be considered as *part of the totality of circumstances* surrounding [a] fatal shooting," *id.* at 637 (emphasis in original).

---

[21] *Id.* at 6, 8, 9.

[22] To take one example, if the police shoot at a suspect and instead hit an innocent bystander, the bystander (or her estate) will likely be unable to bring a Fourth Amendment claim, even if the police's use of lethal force was wholly unreasonable, because a bystander who is shot is not "seized." *See United States v. Lockett*, 919 F.2d 585, 590 n.4 (9th Cir. 1990) (quoting *Brower v. County of Inyo* 489 U.S. 593, 597 (1989)). But the bystander (or her estate) might well be able to bring a state-law-negligence claim. *See Rodriguez v. City of Fresno*, 819 F. Supp. 2d 937, 946–48, 952 (E.D. Cal. 2011) (holding that bystander injured in police shooting could not sustain a Fourth Amendment claim but could sustain a negligence claim because "absence of a constitutional harm does not equate to absence of liability under state tort law") (citing *Bublitz v. Cottey*, 327 F.3d 485, 489–90 (7th Cir. 2003)).

Causation is an element in a state-law-negligence claim. The court will instruct the jury with CACI 430, which explains causation in the context of a state-law-negligence claim. The court denies the defendants' request to modify CACI 430. *County of Los Angeles v. Mendez*, 137 S. Ct. 1539 (2017), did not change California's law on negligence and causation and does not call for modifying California's form jury instruction. The court further denies the defendants' request that the jury be instructed with a modified version of CALCRIM 507, a criminal jury instruction, in this civil case. The court will instruct the jury with the applicable civil jury instruction on that issue, CACI 440. *Cf. San Diego Cty. Dep't of Soc. Servs. v. McKeown (In re McKeown)*, 25 Cal. App. 4th 502, 506–07 (1994) (giving civil jury instructions, not criminal jury instructions, in civil trials).

### Defendants' Motion in Limine 2: Lay Witness Opinion — Police Tactics or Mr. Bui's Mental Condition

The court refers the parties to its discussion of percipient witnesses, above. Lay witnesses may testify as to what they saw and the situation as they perceived it, but they may not testify as to conclusions of whether the force the defendants used was excessive, unreasonable, or greater than necessary. *Cf. Tan v. City and Cty. of S.F.*, No. C 08-01564 MEJ, 2010 WL 726985, at *3 (N.D. Cal. Feb. 26, 2010).

By way of (non-exhaustive) examples, a percipient lay witness could properly testify that Mr. Bui was "scrawny," that Officers Ortiz and Wilson were "big guys, bulky guys," and that it appeared to the witness that the officers "could have easily taken [Mr. Bui] down."[23] This is testimony about the witness's lay perceptions, not an expert opinion.

By contrast, lay witnesses may not give opinions about police tactics.[24] Additionally, lay witnesses may not give opinions about whether the defendants used excessive force. Also, lay witnesses may not give opinions as to Mr. Bui's mental condition or what effect his mental condition had on his conduct, other than what they actually perceived. Percipient lay witnesses

---

[23] *See* Defs.' MIL 2 – ECF No. 209 at 2–3.

[24] The plaintiffs agree with the defendants that such opinions are inadmissible. Pls.' Opp'n to Defs.' MIL 2 – ECF No. 222 at 3.

1 may testify that on December 29, 2010, Mr. Bui appeared confused or appeared not to understand what the defendants were saying to him (if that is what the witnesses perceived). But they may not, for example, testify as about whether Mr. Bui's mental illness affected his actions on the night he was shot. *See, e.g.*, *Lawson v. Lawson*, No. 3:14-cv-00345-WGC, 2015 WL 5474763, at *2 (D. Nev. Sept. 17, 2015) ("[A] lay witness . . . cannot express a medical diagnosis or causation unless it is within the usual and ordinary experience of a lay person."). In addition to being an improper opinion, such testimony is more prejudicial than probative. While some of the plaintiffs' witnesses might have "had enough intimate contact with Mr. Bui to form an opinion as to his mental state,"[25] those opinions of witnesses who knew Mr. Bui for years has no bearing on what would have been apparent to Officers Ortiz and Wilson about Mr. Bui's mental illness, the relevant issue in this case.

**Defendants' Motion in Limine 3: Mr. Bui's Mental Condition**

The subject of this motion has been addressed in the court's rulings on the plaintiffs' Motion in Limine 3 and the defendants' Motion in Limine 2. The plaintiffs do not plan to call Mr. Bui's treating physicians or psychiatric experts.[26]

**Defendants' Motion in Limine 4: Punitive Damages**

The motion is granted in part and denied in part. The Ninth Circuit's model jury instructions provide that the jury may award punitive damages "only if [it] find[s] that the defendants' conduct that harmed the plaintiffs was malicious, oppressive, or in reckless disregard of the plaintiffs' rights." The defendants argue that the Ninth Circuit's ruling in *Bui v. City and County of San Francisco*, 699 F. App'x 614 (9th Cir. 2017), established that Officers Ortiz's and Wilson's conduct was not malicious, oppressive, or in reckless disregard of Mr. Bui's rights. The plaintiffs do not oppose the motion as to the issue of reckless disregard, but they do object on the issues of malice and oppression.

---

[25] *See* Pls.' Opp'n to Defs.' MIL 2 – ECF No. 222 at 2.

[26] Pls.' Opp'n to Defs. MIL 3 – ECF No. 223 at 2.

ORDER – No. 11-cv-04189-LB            13

Under the Ninth Circuit's model jury instructions, "[c]onduct is malicious if it is accompanied by ill will, or spite, or if it is for the purpose of injuring the plaintiff," and "[a]n act or omission is oppressive if the defendants injure or damage or otherwise violate the rights of the plaintiffs with unnecessary harshness or severity, such as by misusing or abusing authority or power or by taking advantage of some weakness or disability or misfortune of the plaintiffs." Regarding malice, the plaintiffs do not challenge the defendants' assertion that the Ninth Circuit's opinion forecloses the argument that the defendants acted "for the purpose of injuring the plaintiff," but they argue that the Ninth Circuit's opinion did not address or foreclose the argument that the defendants' conduct was "accompanied by ill will, or spite." Regarding oppression, the plaintiffs argue that the Ninth Circuit's opinion did not address or foreclose any of the factors in the definition of an "oppressive" act.

The court agrees with the plaintiffs. As the plaintiffs did not object to removing "reckless disregard" or the "purpose of injuring the plaintiff" component of "malicious" conduct, the court will modify the Ninth Circuit's model jury instructions to remove those references. The court otherwise denies the defendants' motion to strike the plaintiffs' demand for punitive damages and, in accordance with the Ninth Circuit's model jury instructions, will instruct the jury on "oppressive" conduct and the "accompanied by ill will, or spite" component of "malicious" conduct.

**Defendants' Motion in Limine 5: Complaints, Administrative and OCC Investigations, Subsequent Remedial Measures**

The motion is granted in part. The plaintiffs do not oppose the defendants' request to exclude subsequent remedial measures, administrative investigations, and the investigations of the Office of Citizen's Complaints, and hence that evidence is excluded. Additionally, evidence or argument regarding unrelated police misconduct is excluded.

As to the motion to exclude complaints of misconduct against the officers, the plaintiffs represent that the defendants have not identified any other complaints against Officers Ortiz and Wilson and hence there is nothing else to exclude. At the February 22 conference, the defendants agreed to verify and supplement (if necessary) their production. All evidence, whether the subject

of a specific motion in limine or not, remains subject to the Federal Rules of Evidence, including Rules 403 and 404(b).

The parties agreed that this approach extends to excluding evidence of commendations.

**Defendants' Motion in Limine 6: Expert Witness Paul Hermann**

The motion is granted in part and denied in part. The court denies the defendants' request to exclude Dr. Hermann altogether. Dr. Hermann's testimony, however, is limited to opinions included in his Rule 26 report. The court agrees with the defendants that the opinions that Dr. Hermann offered at his deposition that the defendants highlight in their motion were not disclosed in his expert report. For example, the report does not disclose an opinion that Mr. Bui was "not advancing very fast" towards Officers Ortiz and Wilson, nor does it disclose an opinion that if Mr. Bui had been advancing at a fast speed, he would have fallen forward when he was shot. The court disagrees with the plaintiffs' arguments that these are merely "explanations" of the opinions in the report; these are new opinions and are therefore excluded. Similarly, Dr. Hermann's speculation that Mr. Bui might have been "on his knees begging for mercy," even if he frames this as just one of several possible hypothetical scenarios, does not have factual support and is inflammatory. Dr. Hermann may not offer this opinion or other similarly inflammatory opinions at trial.

**Defendants' Motion in Limine 7: Probable Cause**

The motion is denied. As the plaintiffs correctly point out, the relevant pattern jury instruction addresses "whether there was probable cause for a reasonable officer to believe that the suspect had committed a crime *involving the infliction or threatened infliction of serious physical harm*," not just whether there was probable cause to make an arrest generally. Ninth Circuit Pattern Jury Instruction No. 9.25(12) (emphasis added); *accord Bui*, 699 F. App'x at 614–15 (addressing issue of whether Mr. Bui "'posed a significant threat of death or serious physical injury to the officers or others,' a prerequisite for the use of deadly force to be reasonable") (internal brackets omitted).

While the defendants speculate that the plaintiffs will argue to the jury that the police did not have probable cause to make an arrest generally or reasonable suspicion to investigate the situation, the court cannot imagine that the plaintiffs will actually waste their trial time on those arguments — and if they do, the court has every confidence in the defendants' ability to make

responsive arguments that the police did have reasonable suspicion and probable cause. The court is not going to give an affirmative instruction that the police had probable cause to arrest Mr. Bui.

**Defendants' Motion in Limine 8: Expert Witness Roger Clark**

The court grants in part and denies in part the motion. First, the motion was filed late, and there is no opposition as a result. Second, as discussed above, *see* Rulings on Defs.' Mot. in Limine 1, the court disagrees with the defendants' arguments regarding negligence and pre-shooting conduct. Third, the defendants make some fair arguments: some opinions in Mr. Clark's reports refer to evidence that the parties have agreed to exclude (the investigation of the Office of Citizen's Complaints), opine on claims that have been dismissed, are legal conclusions, and would not help the jury to understand the evidence or to determine a fact in issue. Fourth, some of the issues in this motion may be moot: for example, the plaintiffs represented at the February 22 conference that they will not be making a "failure to provide medical care" argument.

The court refers the parties to its discussion of expert witnesses. As explained above, questions to expert witnesses are best couched as hypotheticals. An expert cannot testify as to ultimate issues of law. By way of (non-exhaustive) examples, statements such as:

- "Throughout the country, law enforcement officers are trained regarding the required and necessary methods and means of their response to calls for assistance with mentally ill subjects (as are described above) and are required by policy, training and law to avoid excessive and unnecessary force. Officers Wilson and Ortiz and Inspector Whitfield appear in this incident to have failed in their duty to utilize these methods and follow these standards. . . .,"[27]
- "I agree with the findings of the OCC that Officers Wilson and Ortiz 'used unnecessary force' and 'failed to take required action during the investigation' . . . .,"[28]

---

[27] Clark Rule 26 Report – ECF No. 243-2 at 8 (¶ 1).

[28] *Id.* (¶ 2).

ORDER – No. 11-cv-04189-LB         16

- "Officers Wilson and Ortiz cannot be excused or forgiven for their alleged collective failure to hear the fact that Mr. Bui had mental problems which was broadcast via radio to all responding units,"[29] and
- "Officer Wilson's and Officer Ortiz'[s] failure to view the situation as a medical/mentally ill issue contributed to more confusion and ultimately more aggression — simply put, their actions unjustifiably and unnecessarily exacerbated the situation,"[30]

are opinions on ultimate issues of law.

As explained above, an expert may address hypothetical situations (such as what a police officer might do in a given situation) but cannot testify as to ultimate legal issues (such as whether a course of conduct is legally reasonable or unreasonable).

**Defendants' Motion in Limine 9: Pointing a Gun**

The motion is moot. The plaintiffs have represented at the February 22 conference that they will not claim any gun pointing as a separate Fourth Amendment violation.

**Presentation of Financial Information**

Although not raised as a motion in limine, the defendants moved at the February 22 conference to exclude the individual defendants' financial information from trial until after the plaintiffs proved their entitlement to punitive damages. The defendants thus asked the court to bifurcate the trial, leaving a stage in which the jury will return to set a punitive damages award. The plaintiffs did not oppose the request. The court directs the parties to confer on reducing the information that they will put into evidence on this point (to streamline the process if it becomes necessary).

**Defendants' Objection to Jury Questionnaire Question 44 and Related Voir Dire**

The court agrees that the plaintiffs should not suggest during voir dire (or trial) that the City and County of San Francisco may pay a judgment rendered against the individually named

---

[29] *Id.* at 10 (¶ 5).

[30] *Id.* (¶ 7).

ORDER – No. 11-cv-04189-LB          17

officers. Beyond that, the defendants' objection is overruled. The City and County is a named defendant. The defendants' claim of prejudice notwithstanding, the fact that the City and County is a named defendant means that it may have to pay a judgment, and the parties may inquire about opinions or biases that might affect a juror's ability to render a judgment where the City and County is a party.

Nothing in Question 44 refers to punitive damages, and hence Question 44 does not violate California Government Code § 825(b)(3). Additionally, the jury instructions on punitive damages will expressly inform the jury that "[p]unitive damages may not be awarded against Defendant City and County of San Francisco."

## 6. Trial

At the end of each trial day (generally, by 2:00 p.m.), counsel must give notice of the order of proof (meaning, the order of witnesses and the exhibits, including illustrative exhibits) for the next trial day. The parties must notify the court of any issues by the end of the day so that the court can resolve them. To the extent that the parties will call hostile witnesses, which means that the opposing party's "cross-examination" will be its direct examination, counsel must provide a list of all exhibits to be used with the same witness on cross-examination (other than for impeachment).

**IT IS SO ORDERED.**

Dated: February 27, 2018

LAUREL BEELER
United States Magistrate Judge